No. 85-636

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

EDWARD MASSEY and LUCILLE MASSEY,
his wife,

        Plaintiffs and Respondents,

    -vs-

RAY SELENSKY,

        Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Poore, Roth & Robinson; Donald C. Robinson, Butte,
        Montana

    For Respondent:

        Knight, Dahood, McLean & Everett; Bernard J. Everett,
        Anaconda, Montana

Submitted on Briefs: Dec. 18, 1986

Decided: January 13, 1987

Filed: JAN 13 1987

_Ethel M. Harrison_
            Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from the District Court of the Third Judicial District in and for the County of Deer Lodge, Montana, granting plaintiff partial summary judgment. We reverse and remand.

This the second time this case has been before the Court. See Massey v. Selensky (Mont. 1984), 685 P.2d 938, 41 St.Rep. 1596. The parties have stipulated to the following facts: Plaintiff/respondent (Massey) and defendant/appellant (Selensky), both employed by the Anaconda Smelter, Anaconda Montana, rode to work in Selensky's pickup truck the morning of January 8, 1980. They entered the employer's premises by the main gate and travelled some distance to the change house or clock house, a small building where the company time clock was located. The building was at an intersection from which various roads led to employee parking lots.

Selensky parked his truck on an inclined area near the clock house and both men walked into the building for the purpose of punching their time cards. Massey punched-in first, shortly after 6:30 a.m., and left the building to walk to the machine shop, where he worked. The shift did not begin until 7:30, but it was his usual practice to punch-in early, drink coffee with fellow employees, change into work clothes, and generally prepare for work. The employer was aware of this practice. As Massey walked toward the machine shop, Selensky's unoccupied truck rolled backwards down the incline, struck and injured Massey. He filed a claim with the Workers' Compensation Division for compensation and medical expenses incurred for his injuries. The claim was allowed and Massey received compensation benefits and payment of medical expenses as allowed by law.

2

Massey and his wife also filed a complaint against Selensky in District Court. Both parties moved for summary judgment. Summary judgment was granted Selensky, and Massey appealed. We reversed and remanded in Massey, supra, ordering the District Court to determine whether Selensky was acting within the course and scope of his employment at the time of the alleged negligence, making him a co-employee immune from suit pursuant to § 39-71-412, MCA.

Additional discovery was undertaken, and both parties again filed motions for partial summary judgment. Following oral argument, the District Court reversed its first decision and ordered partial summary judgment on the issue of co-employee immunity be entered for Massey. Selensky appeals.

It is appropriate first to emphasize the policy underlying the Workers' Compensation Act which is to compensate employees for injuries in the work place without regard to fault. In turn an employee relinquishes the right to bring a negligence action against his employer or a fellow employee. A majority of states provide this immunity from common law liability. The principle of enterprise liability was recognized by this Court long before enactment of the co-employee statutory protection. Madison v. Pierce (1970), 156 Mont. 209, 478 P.2d 860; Mahlum v. Broeder (1966), 147 Mont. 386, 412 P.2d 572; State ex rel. Morgan v. Indus. Accident Bd. (1956), 130 Mont. 272, 300 P.2d 954. Co-employee protection is a natural exension of enterprise liability and relieves the employee of justifiable apprehension about the possibility of a suit against him. Co-employee immunity is essential to the integrity of the Act.

Our previous decision required only that the District Court focus on Selensky's status at the time of the alleged

3

negligence. After the first Massey case was handed down, the parties stipulated that Selensky's negligence occurred at the time he parked his vehicle near the change house, minutes before Massey was hurt. We said previously the proper test for the District Court to determine whether co-worker's actions were so work related as to make him immune from suit under § 39-71-412, MCA, is whether he is acting within the course and scope of his employment at the time the negligent acts occurred. Massey, supra, at 940, 41 St.Rep. at 1599.

To determine whether Selensky was acting within the course and scope of his employment at the time he parked his truck, the District Court applied the going and coming rule. Generally, travel by an employee to and from work is outside the course and scope of employment. Gordon v. H. C. Smith Construction Co. (1980), 188 Mont. 166, 612 P.2d 668. Findings of the District Court will be set aside only when they are clearly erroneous. Rule 52(a), M.R.Civ.P. We find it is error to apply the going and coming rule in this case. The parties already had travelled to and arrived at their place of work. Rather, the premises rule should be used. Compensable injuries include those sustained by employees having fixed hours and place of work who are injured while on the premises. See Sieck v. Trueblood (Colo. 1971), 485 P.2d 134, and Stewart v. U.S. (10th Cir. 1982), 716 F.2d 755. The negligent act occurred on the employer's premises within a reasonable time before the commencement of Selensky's shift. The conduct of both Massey and Selensky was in accord with accepted practice at the plant, and was in accordance with their repeated and usual procedure. Massey was found to be an employee at the time of the accident. Selensky's temporarily parking his truck in an area where parking was not permitted is legally insignificant for purposes of determining his status as employee.

4

When analyzing misconduct for the purpose of determining status, a distinction must be made between prohibited activities outside the boundaries of the ultimate work to be done, such as using a machine to cut paper for employee's personal use, in violation of company policy, and prohibited methods of doing the work, such as a pilot who, while giving a lesson, flies at an altitude in violation of a rule limiting altitude. Misconduct which involves violation of regulations or prohibitions relating to method of accomplishing a task does not take an employee outside the course and scope of employment. See 1A Larson, Workmen's Compensation Law, Sec. 31, pp. 6-8. Parking in a restricted zone on the employer's property while punching-in had been a common practice of numerous employees over a considerable period of time. Such a practice is not that type of conduct which takes one outside the course and scope of his employment.

We find the negligent act of parking his truck for the purpose of punching-in does not remove Selensky from the co-employee immunity protecting him from common law liability.

We reverse and remand to the District Court for an order consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

5

_____

_____
John L. Sheehy

_____
William E. Hunt Sr.
Justices

6

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

This rather amazing majority opinion flies directly in the face of the first case before this Court entitled Massey v. Selensky (Mont. 1984), 685 P.2d 938, 41 St.Rep. 1596. In that case we held there was a fact question about whether Selensky was at work when he temporarily stopped his pickup truck on the employer's premises. Selensky walked into the clock house to "punch-in" and then was going to return to his vehicle so that he could take it to the employee parking lot. The trial court held that, as a matter of law, Selensky was not at work at the time he stopped the truck. He certainly had not punched in.

This Court finds as a matter of law that Selensky was "on the job" when he temporarily stopped the truck. The very most favorable view to the defense should result in a fact question that must be resolved by the jury. This would require reversing summary judgment in favor of the plaintiff and remanding for a trial.

This Court, in finding there is no fact issue, runs directly contrary to our other decision. If there was no fact question for submission to a jury then the first case should have resulted in summary judgment for the defendant.

The majority opinion is but another example of the inconsistency of approaches emanating from this Court. We do not follow the law. We simply make it up as we go.

I vigorously dissent.

Justice

7